The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner but have rewritten the Opinion and Award for purposes of clarity. The Full Commission, in its discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law, and ultimate order.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between the parties at all relevant times.
3. At all relevant times, Burlington Industries was a duly qualified self-insured with Crawford Company the servicing agent.
4. Plaintiffs average weekly wage at all relevant times was $378.70. This yields a compensation rate of $252.06.
5. The onset of plaintiffs alleged occupational disease was 31 March 1997.
6. Defendant filed a Form 60 on 11 July 1998, and plaintiff was paid temporary total disability benefits from 11 May 1998 through 1 June 1998.
7. A packet of Industrial Commission forms were stipulated into evidence as Plaintiffs Exhibit A. Medical records consisting of 45 pages were stipulated into evidence as Plaintiffs Exhibit B.
 ***********
The Full Commission makes the following findings of fact:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 56 years old and a resident of Forest City, North Carolina. Plaintiff has spent most of her working life employed in sewing plants. She went to work for defendant-employer on 16 January 1995. Plaintiff worked in a burler-mending position that required her to clean up the cloth by picking up debris with tweezers.
2. Plaintiff used tweezers on a suction hose to pick cotton cloth for defects known as burl knots. She was required to reach up and pull down the bolts of cloth, grab the cloth, pinch it between her thumb and fingers, and then pull.
3. In order to pull the cloth down plaintiff had to grasp it with both hands and pull downwards. The tweezer equipment she used was called a burling iron. The tool had sharp ends that resembled tweezers and was manipulated in the same fashion as tweezers. It had an air hose attached to suction off the fuzz, and other material that was picked off the cloth.
4. Plaintiff used her first three fingers and thumb in a pinching motion continuously during her shift. Plaintiff generally worked an eight-hour shift, occasionally working as many as ten hours. Plaintiff stood most of the time during her work. She was paid on a production basis and was required to meet or exceed a standard of production.
5. Seven months after plaintiff began work for defendant she began having problems with her right hand. Her wrist and hand occasionally became numb. She also accidentally injured her left hand when her hand slipped while she was pulling cloth, causing her to hit her left hand on the inside of her wrist.
6. On 27 May 1997, plaintiff presented to her family doctor, Dr. Harrill Washburn, complaining of swelling and tenderness in her left and right wrists.
7. On 18 June 1997 plaintiff presented to Dr. William Stucky, an orthopedic surgeon with the Miller Clinic in Shelby, North Carolina. Dr. Stucky diagnosed plaintiff with de Quervains stenosing tenosynovitis and recommended steroid injections. Dr. Stuckey also recommended surgery for a release of the first dorsal compartment to take place on 8 July 1997.
8. However, instead of surgery, defendant required plaintiff to consult an orthopedic surgeon. According to Dr. Michael Roberts plaintiff had de Quervains tenosynovitis of the left wrist and thumb. Dr. Roberts treated her with steroid injections and obtained good results. Dr. Roberts suggested a nerve conduction study for right-sided carpal tunnel syndrome. The studies indicated a moderate slowing of the median nerve across the right carpal tunnel and mild slowing on the left.
9. Defendant next referred plaintiff to Dr. Stephen J. Naso, Jr. in Charlotte who recommended a right carpal tunnel release.
10. Plaintiff was next transferred to Dr. Christopher T. Lechner for treatment on 10 December 1977. Dr. Lechner diagnosed right carpal tunnel syndrome and left de Quervains syndrome. Dr. Lechner performed a right carpal tunnel release on 2 March 1998 and performed surgery to plaintiffs left hand on 11 May 1998.
11. Dr. Lechner released plaintiff on 6 July 1998 at maximum medical improvement.
12. Defendant filed a Form 60 on 11 July 1998 and paid plaintiff temporary total disability benefits from 11 May 1998 through 1 June 1998.
13. Plaintiff attempted to return to her full-time employment as a burler with defendant on 1 June 1998. However, plaintiff was unable to perform her job. She suffered pain, discomfort, and swelling in her wrists bilaterally. According to Carolyn W. Kimbrell, a registered nurse at defendants plant, when plaintiff returned from surgery by Dr. Lechner and attempted to perform her regular full-time job as a burl-mender, plaintiff had swelling in her hands, fingers, and wrists. Ms. Kimbrell provided on-site medical treatment to plaintiff.
14. Due to her pain, plaintiff voluntarily quit her job on 19 August 1998. Plaintiff has not sought employment with another employer since that time. Plaintiffs refusal to continue in the burler job was justified due to her continued pain.
15. Although there may have been other jobs available with defendant, job descriptions were not provided and defendant did not seek approval of those jobs from plaintiffs physicians.
16. Plaintiff returned to Dr. Lechner on 24 August 1998 complaining of continued pain in her hands when she returned to work. Dr. Lechner recommended that plaintiff submit to a functional capacity evaluation. The FCE would have been helpful in giving Dr. Lechner objective information as to plaintiffs grip strength and other data to assist him in determining the future course of plaintiffs treatment, as well as plaintiffs work limitations. The record is unclear as to why this functional capacity evaluation was never performed.
17. Dr. Stucky continued to treat plaintiffs hand problems from late fall 1998 into spring 1999. An EMG conduction study performed 2 June 1999 indicated deterioration in plaintiffs left hand and improvement of plaintiffs nerve function in the right hand. According to Dr. Welshofer, who performed the EMG, plaintiff had left-sided carpal tunnel syndrome and recommended a release. Dr. Stucky performed a release of the left carpal tunnel syndrome on 2 September 1999. At the time of the hearing before the Deputy Commissioner, Dr. Stucky continued to treat plaintiff.
18. According to Dr. Stucky, the carpal tunnel syndrome, trigger thumb, and de Quervains diseases were all interrelated and tenosynovitis-type problems. Such hand diseases, according to Dr. Stucky, are associated with jobs involving repetitive activity. Plaintiff held a repetitive motion job that put her at risk of developing such conditions.
19. Plaintiffs conditions were caused and/or aggravated by her job with defendant. Plaintiff was at an increased risk of developing bilateral carpal tunnel syndrome compared to the general public not so employed due to the nature of her repetitive employment. Plaintiffs de Quervains tenosynovitis was caused by trauma in her employment.
20. Given plaintiffs medical history, Dr. Stucky recommended that plaintiff not return to employment that requires repetitive hand motions. If plaintiff were to continue repetitive work, she would have a high likelihood of recurrence of tenosynovitis.
21. The more recent carpal tunnel syndrome that developed in plaintiffs left hand was simply a continuation of the same problem she has had all along. Dr. Stucky was of the opinion that it would be very difficult for plaintiff to work at a repetitive job or one that involved heavy lifting. Plaintiffs hand problems were related to her employment.
22. In the opinion of Dr. Stucky, if plaintiff continues to improve, eventually she might be able to do light, non-repetitive work. However, as of the second deposition of Dr. Stucky, plaintiff continued to be disabled from work and had not reached maximum medical improvement from the September 1999 surgery.
23. This matter was appealed to the Full Commission by defendant from an Opinion and Award awarding benefits and results in the affirmation of that award.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffers from bilateral carpal tunnel syndrome and de Quervains tenosynovitis, which are occupational diseases that are a direct result of the repetitive work she was required to perform at defendant. Plaintiffs employment increased her risk of developing bilateral carpal tunnel syndrome as compared to members of the general public. N.C. Gen. Stat. 97-53(13). Plaintiffs bilateral de Quervains tenosynovitis was caused by trauma in her employment. N.C. Gen. Stat.97-53(21). Plaintiffs occupational diseases are therefore compensable.Id.; Booker v. Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. The Form 60 filed with the Commission on 11 July 1998 and defendants subsequent payment of workers compensation benefits to plaintiff constitute an award of the Commission with respect to compensability and liability for the occupational diseases. Calhoun v. Wayne Dennis Heating Air Cond., 129 N.C. App. 794, 501 S.E.2d 346 (1998). Therefore, plaintiff is entitled to a rebuttable presumption of continuing disability. Smith v. Sealed Air Corp., 127 N.C. App. 359, 489 S.E.2d 445
(1997); Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434
(1996).
3. Defendant has failed to rebut the presumption of continuing disability. Plaintiff has been physically unable to perform the work provided to her by defendant subsequent to the development of her occupational diseases. Plaintiffs refusal of the work offered her by defendant was justified in that the proffered job was not suitable. N.C. Gen. Stat. 97-32.
4. Plaintiff is entitled to temporary total disability compensation at the rate of $252.06 per week from 19 August 1998 through the present and continuing until further order of the Commission. N.C. Gen. Stat. 97-29.
5. Subject to the time limitation in N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendant provide all medical treatment arising from the compensable occupational diseases to the extent the treatment tends to effect a cure, give relief or lessen plaintiffs disability. The approved medical expenses include the treatment by Dr. Stucky. N.C. Gen. Stat. 97-25.
6. Plaintiff is entitled to an attorneys fee assessed against defendant in the amount of $1,000.00 pursuant to N.C. Gen. Stat. 97-88.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation benefits in the amount of $252.06 per week from 19 August 1998 through the present and continuing until further order of the Commission.
2. Subject to the time limitation in N.C. Gen. Stat. 97-25.1, defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable occupational diseases. The approved medical expenses include treatment by Dr. Stucky.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is hereby approved for plaintiffs counsel and shall be deducted from the sums due plaintiff and paid directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth check.
4. Defendant shall pay the costs, including a reasonable attorney fee in the amount of $1,000.00 to plaintiffs attorney.
This the ___ day of November, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER